Steven M. Kayman (SK 8123)
**Proskauer Rose LLP**
Eleven Times Square
New York, New York 10036
212-969-3000

*Attorneys for Plaintiff Ipsos-Insight, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IPSOS-INSIGHT, LLC,

                Plaintiff,

     - against -

JON GREENWOOD,

               Defendant.
_____

**COMPLAINT**

15 Civ. _____

**JURY TRIAL DEMANDED**

      Plaintiff Ipsos-Insight, LLC (together with its affiliates, "Ipsos" or the "Company"), by its attorneys Proskauer Rose LLP, for its Complaint against Defendant Jon Greenwood ("Greenwood"), alleges as follows:

**NATURE OF THE ACTION**

     1.    While still employed by Ipsos as a highly paid senior executive, Greenwood violated his employment contract, as well as his fiduciary duty of undivided loyalty, by recruiting other Ipsos employees and a paid Ipsos consultant to join him in a competing enterprise, thereby subverting their loyalty to Ipsos, and by aggressively targeting Ipsos business and clients for diversion to his new planned competitive business.

     2.    Ipsos seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, that the restrictive covenants in Greenwood's Ipsos

employment agreement are enforceable, that Greenwood was properly terminated with Cause, and that because he was properly terminated with Cause, Ipsos is not required to make any Non-Compete Payments to Greenwood to enforce the covenant not to compete in the agreement. Ipsos also seeks injunctive relief enforcing the restrictive covenants. In addition, Ipsos seeks compensatory and punitive damages, including the "clawback" of compensation received by Greenwood during all times he acted disloyally, based on causes of action for breach of the duty of loyalty, aiding and abetting breaches of the duty of loyalty of other Ipsos employees and a paid consultant, and breach of contract.

## PARTIES

3. Ipsos is a Delaware limited liability company and is registered to do business in New York. Its sole member is Ipsos America, Inc., a Delaware corporation with its principal place of business at 1271 Avenue of the Americas, New York, New York.

4. Defendant Jon Greenwood is an individual and citizen of New Jersey, residing at 416 Birch Ave., Westfield, New Jersey 07090. From September 2012 until he was terminated on August 13, 2015, Greenwood was employed by Ipsos in its New York City office.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of costs or interest.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district, and the parties agreed to submit to the exclusive jurisdiction and venue of the federal and state courts of the State of New York, County of New York, for the purpose of any legal proceedings relating to

or arising under Greenwood's employment agreement with Ipsos' predecessor-in-interest, Ipsos-Insight Corporation, dated August 15, 2012 (the "Agreement").  The Agreement further provides that it will be governed by and construed in accordance with New York law.

## **FACTUAL ALLEGATIONS**

*Ipsos*

7.      Ipsos is one of the world's leading survey-based market research companies.  With offices throughout the world, Ipsos is a globally-integrated enterprise serving clients in a diverse array of industries.

*Greenwood's Employment and Contractual Obligations to Ipsos*

8.      Greenwood began his employment with Ipsos in September 2012 as President of Ipsos' MediaCT business unit in the United States, which focuses on media, content, telecoms and technology research.

9.      On August 23, 2012, Greenwood accepted an offer of employment with Ipsos, memorialized in the August 21, 2012 offer letter Greenwood signed.  The offer letter provided that Greenwood's position at the inception of his employment would be President of Ipsos' MediaCT U.S. business unit located in the New York City office with an annual base salary of $400,000, sign on bonus of $50,000, and a guaranteed bonus for the first year of $100,000.

10.     The offer letter advised that the offer was contingent upon Greenwood's execution of an attached agreement with Ipsos containing, among other things, certain restrictive covenants, and advised Greenwood that the terms and conditions outlined in the agreement would survive any changes in his employment with the Company and remain in effect following his separation from the Company "for any reason."

11.     Greenwood signed the agreement attached to his offer letter, which was dated August 15, 2012 (the "Agreement").

12.     Section 1 (a) of the Agreement provides that Greenwood "shall devote [his] entire working time to the Company's business and the performance of the duties and responsibilities assigned to [him]."

13.     Section 1 (c) prohibits Greenwood from engaging in any other business or enterprise, excluding the holding of certain equity interests, without Ipsos' prior written consent.

14.     The Agreement contains a covenant not to compete (the "Non-Compete"), which prohibits Greenwood from competing during the term of his employment and for one year thereafter.  Thus, section 6 (a) of Agreement provides:

> You acknowledge that the Company is in a highly competitive industry and that your leaving the Company to join a competing business would jeopardize the Company's Client Confidences, Confidential Information and client relationships. Accordingly, you agree, subject to the provisions below, including those relating to payments that may be due to you, that during your employment with the Company, and for a period of twelve (12) months after the date of termination of your employment for any reason (the "Non-Compete Period"), you will not directly or indirectly work for or with, own, invest in, render any services or provide advice to, or act as officer, director, employee, or independent contractor for, any person or entity that competes with the Company in the products or services it offers to its clients. You acknowledge that given the nature of the business of the Company and the geographical market of the Company combined with your role and responsibilities, the geographical area of the United States and Canada and the period of twelve (12) months are both reasonable.

15.     If Greenwood is terminated by the Company without Cause or resigns from the Company, section 6 (c) of the Agreement provides that the Non-Compete only applies "during the period . . . that the Company elects to pay [Greenwood] an amount equal to [his] Base Salary in effect on the effective date of the termination of [his] employment" (the "Non-Compete Payments").

4

16. However, if Greenwood is terminated with Cause, section 6 (b) of the Agreement provides that the Non-Compete applies without the need for any Non-Compete Payments.

17. "Cause" is defined in section 6 (b) as:

> the occurrence of any one or more of the following acts or omissions by you: (i) material failure, or willful and material refusal, to perform your duties under this Agreement; (ii) intentional insubordination; (iii) willful misconduct, gross negligence, fraud or dishonesty in the performance of your duties; (iv) alcoholism; (v) habitual substance abuse or possession of illegal drugs; (vi) arrest for a felony; (vii) conviction or plea of nolo contendere for a misdemeanor that is materially harmful to the Company or its reputation; or (viii) material breach of this Agreement or any other written agreement between you and the Company.

18. Section 6 (d) of the Agreement provides that if at the time of the termination of Greenwood's employment he "intends to work for any business which in any way touches on, is related to, or competes with the business of the Company" that he provide the Company with at least two weeks advance written notice of such intention.

19. Section 6 (e) provides that "[i]n any instance where the Company has the right to elect to make Non-Compete Payments, it must do so within ten (10) business days of the Company's receipt of [Greenwood's] written notice to the Company of [his] intent to resign or [his] intent to go to a competing entity, or of [his] receipt of notice of termination from the Company, as the case may be."

20. The Agreement also prohibits Greenwood from soliciting or performing services for Ipsos clients during and for one year after the termination of his employment (the "Client Non-Solicit"). Thus, section 7 provides:

> **NON-SOLICITATION OF CLIENTS**. You acknowledge that, by virtue of your employment with the Company, you have gained or will gain knowledge of the identity, characteristics, and preferences of the Company's clients, among other Client Confidences and Confidential Information, and that you would inevitably have to draw on such information if you were to solicit or service the Company's clients on behalf of a competing business. Accordingly, you agree that during

5

your employment with the Company, and for one (1) year following the termination of your employment for any reason, you will not, on your own behalf or behalf of anyone else, directly or indirectly solicit or accept the business of, or perform any competing services for:

(a) actual clients of the Company for whom you performed services or had direct contact or access to Client Confidences during the course of the last two (2) years of your employment with the Company, or

(b) prospective clients with whom you were in direct contact or for whom you participated in any way in a request for proposal response, a proposal, or any written or oral presentation during the course of the last two (2) years of your employment with the Company.

You further agree that during your employment, and for the one (1) year period thereafter, you will not encourage or assist any person or entity in competition with the Company to solicit or service any actual or prospective client of the Company covered by this Section, or otherwise seek to encourage or induce any such client to cease doing business with, or reduce the extent of its business dealings with, the Company.

21. The Agreement further prohibits Greenwood (in section 8) from soliciting, recruiting, hiring or seeking to hire "any person who is at the time (or was during the prior six (6) months) an employee, consultant or independent contractor of the Company" (the "Employee Non-Solicit").

22. Greenwood expressly agreed and acknowledged in the Agreement (in section 10 (e)) that the restrictions contained therein "are fair, reasonable and necessary for the protection of the legitimate business interests of the Company and its affiliated companies." Greenwood further expressly agreed and acknowledged "that any breach of the terms of [the] Agreement would possibly cause irreparable harm to the Company, and that the Company may not have an adequate remedy at law" and that "[t]herefore, in addition to any other remedy which the Company might have, including monetary damages, the Company shall be entitled to injunctive relief for any such breach without the necessity of proving damages or furnishing a bond or other security." (Id.)

23.     The Agreement provides that "[a]ll rights and obligations under this Agreement which by their nature or their terms should survive will remain in effect after any termination or expiration of [the] Agreement."  (Section 10 (j).)

***Greenwood's Misconduct***

24.     In spring of 2015, Ipsos underwent a global restructuring during which the MediaCT business unit merged with a complementary business unit called "ASI."  Greenwood interviewed to become the head this unit in the United States but was ultimately not chosen for the position.

25.     Following the restructuring, Greenwood continued to work for Ipsos in the same role and with the same title and salary as previously.   He also continued to report to the Chief Executive Officer of Ipsos North America, Pierre Le Manh, in the same manner as he had previously.

26.     In August 2015, Ipsos learned that Greenwood, while ostensibly still serving as a senior executive of the Company, had been planning a competing enterprise, called "Acuity Insights" or "Acuity," that Greenwood had recruited other Ipsos employees and a paid Ipsos consultant to join him, and that this subversion had been going on since at least July 2015.

27.     Most of the employees were executives and Greenwood's subordinates.  One was an inside counsel at Ipsos.

28.     The paid consultant had been providing consulting services to Ipsos since May 2014, reporting to Greenwood, and continued to send invoices, on a monthly basis, to Ipsos through the end of July 2015.

29.     Among the evidence detailing Greenwood's plan is an email, sent Tuesday, August 4, 2015, at 11:58 a.m., from Greenwood's personal email address to six Ipsos executives

and the consultant. In the email, Greenwood declares his intent to aggressively target Ipsos clients, divert "existing Ipsos work to the new venture," and "secur[e] work anticipated for Q4 before it is offered to Ipsos." Greenwood also proclaims that the new venture "begins NOW–not in September."

30. The email begins with a reference to an "Acuity Executive Team meeting" held the previous night, in which all recipients appear to have participated.

31. Greenwood also created a business plan for Acuity, which reveals that Greenwood was targeting some of Ipsos' biggest clients and that Greenwood planned to include even more Ipsos employees in his "[c]ore" Acuity team than those copied on his "Executive Team" email. This document goes so far as to highlight which Ipsos employees have relationships with which specific, and targeted, Ipsos clients, emphasizing the value of these employees to Acuity in its efforts to divert business from Ipsos.

32. Greenwood received a JD from George Washington University and an MBA from Wharton. He worked for law firms in New York as a corporate litigator for eight years. He should have known better than to engage in disloyal activity while occupying a senior position of trust and confidence.

*Greenwood's Termination*

33. On August 13, 2015, Ipsos met with Greenwood to discuss his misconduct. Greenwood refused to answer questions and the meeting ended with Greenwood's termination with Cause.

34. By letter dated August 17, 2015, Greenwood's counsel asserted that Greenwood had been terminated without Cause and therefore Greenwood would be free to compete with Ipsos if Ipsos did not make the Non-Compete Payments under the Agreement. Greenwood's

counsel purported to give notice under section 6 (d) of the Agreement that Greenwood intended to compete with Ipsos and stated that Ipsos was required to elect to make Non-Compete Payments within ten (10) business days of receipt of the letter.

35. By responsive letter dated August 20, 2015, counsel for Ipsos informed Greenwood's counsel that Greenwood had been properly terminated for Cause under, at least, subparts (ii), (iii) and (viii) of section 6 (b) of the Agreement.

36. As of the date of the filing of this Complaint, Greenwood continues to maintain that he is free to compete with Ipsos if Ipsos does not pay him the Non-Compete Payments. Greenwood has additionally expressed the view that he would not be bound by any of the restrictions in his employment agreement, including the Employee Non-Solicit, if Ipsos does not pay him the Non-Compete Payments. Ipsos believes otherwise.

## **FIRST CAUSE OF ACTION**

### **(Declaratory Relief)**

37. Ipsos repeats, realleges and incorporates by reference paragraphs 1 through 36, as if fully set forth herein.

38. An actual controversy has arisen and now exists between the parties as to whether Greenwood was rightly terminated for Cause and must refrain from competing with Ipsos for twelve months following the termination of his employment, without payment of any Non-Compete Payments.

39. Ipsos will place the Non-Compete Payments that would be payable to Greenwood for a twelve-month period in a separate account pending the resolution of this dispute so that the Payments will be available should this Court determine that Greenwood was not properly terminated for Cause and Ipsos elects, in accordance with its rights under section 6 (c) of the Agreement, to make such payments. Ipsos is willing to post the Non-Compete Payments with

this Court, put the money in escrow, or undertake any other arrangement that this Court deems appropriate under the circumstances.

40. Declaratory relief will resolve this controversy and eliminate the uncertainties for both parties.

## SECOND CAUSE OF ACTION

**(Breach of the Duty of Loyalty)**

41. Ipsos repeats, realleges and incorporates by reference paragraphs 1 through 40 above as if set forth fully herein.

42. Greenwood, as an employee and senior executive of Ipsos, owed it a fiduciary duty of undivided loyalty in the performance of his duties.

43. Greenwood breached this duty of loyalty by, as set forth more fully above, while still employed, recruiting other Ipsos employees and a paid Ipsos consultant to join him in a competing enterprise, subverting their loyalty to Ipsos, and targeting Ipsos business and clients.

44. As a direct and proximate result of Greenwood's breaches, Ipsos has suffered irreparable harm and damages (including but not limited to employee replacement costs, lost business, and other incidental damages) in an amount to be proven at trial.

45. Moreover, based on Greenwood's wanton, knowing and willful tortious conduct alleged herein, Ipsos also seeks punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**(Aiding and Abetting and Inducing Breaches of the Duty of Loyalty)**

46. Ipsos repeats, realleges and incorporates by reference paragraphs 1 through 45 above as if set forth fully herein.

47. Greenwood had knowledge of the duty of undivided loyalty the other Ipsos employees and the consultant owed while they remained employed by or were providing services to Ipsos.

48. Greenwood substantially assisted in and encouraged their breach of this duty when he, as set forth more fully above, encouraged them to begin working for the new enterprise while still employed with Ipsos and exhorted them to begin competing "NOW–not in September."

49. As a direct and proximate result of Greenwood's breaches, Ipsos has suffered irreparable harm and damages (including but not limited to employee replacement costs, lost business, and other incidental damages) in an amount to be proven at trial.

50. Moreover, based on Greenwood's wanton, knowing and willful tortious conduct alleged herein, Ipsos also seeks punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

(**Clawback of Compensation Under Faithless Servant Doctrine**)

51. Ipsos repeats, realleges and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

52. As a result of Greenwood's acts of disloyalty, alleged above, Ipsos is entitled to recover from Greenwood all compensation it paid to Greenwood during the time he was disloyal.

## FIFTH CAUSE OF ACTION

(**Breach of Contract**)

53. Ipsos repeats, realleges and incorporates by reference paragraphs 1 through 52 above as if set forth fully herein.

54. The Agreement is valid, binding and enforceable, and Ipsos has performed all of its obligations thereunder.

55. Greenwood has breached the Agreement by, among other things, competing with Ipsos during his employment and encouraging other Ipsos employees and a paid consultant of Ipsos to divert Ipsos business and clients.

56. As a direct and proximate result of Greenwood's breaches, Ipsos has suffered irreparable harm and damages (including but not limited to employee replacement costs, lost business, and other incidental damages) in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Ipsos respectfully seeks judgment against Defendant Jon Greenwood as follows:

   a) declaring that Greenwood's restrictive covenants with Ipsos are enforceable, that Greenwood was properly terminated with Cause, and that Ipsos is not required to make any Non-Compete Payments to Greenwood to enforce the covenant not to compete in his employment agreement with Ipsos;

   b) granting Ipsos permanent injunctive relief restraining Greenwood, for a period of one year from the date of his termination from Ipsos, from (i) directly or indirectly working for or with, owning, investing in, rendering any services or providing advice to, or acting as officer, director, employee, or independent contractor for, any person or entity in the United States or Canada that competes with Ipsos in the products or services it offers to its clients; (ii) directly or indirectly soliciting or accepting the business of, or performing any competing services for (a) actual clients of Ipsos for whom Greenwood performed services or had direct contact or access to Client Confidences during the course of the last two (2) years of his employment or (b) prospective clients with whom Greenwood was in direct contact or for whom he participated in any way in a request for proposal response, a proposal, or any written or oral presentation during the course of the last two (2) years of his employment; (iii) encouraging or assisting any person or entity in competition with Ipsos to solicit or service any actual or prospective client of Ipsos covered by his Agreement, or otherwise seeking to encourage or induce any such client to cease doing business with, or reduce the extent of its business dealings with, Ipsos; and (iv) directly or indirectly soliciting, recruiting,

    hiring or seeking to hire any person who is at that time (or was during the prior six (6) months) an employee, consultant or independent contractor of Ipsos.

c) awarding compensatory and punitive damages in amounts to be determined at trial;

d) awarding Ipsos all salary and bonus compensation paid to Greenwood during the time he was disloyal;

e) awarding Ipsos its costs and reasonable attorneys' fees to the extent permitted by law; and

f) awarding such other and further relief as the Court deems just and proper.

Dated: September 10, 2015

        PROSKAUER ROSE LLP

        By: /s/ Steven M. Kayman
         Steven M. Kayman
         Eleven Times Square
         New York, NY 10036
         212-969-3000 (phone)
         212-969-2900 (fax)

        *Attorneys for Plaintiff Ipsos-Insight, LLC*